Below is an opinion of the court.

_____
THOMAS M. RENN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 20-62104-tmr11 |
| TRACY AARON MALONE, | |
| Debtor. | |
| | |
| TRACY AARON MALONE, | Adv. Proc. No. 21-6002-tmr |
| Plaintiff, | |
| v. | |
| | MEMORANDUM DECISION ON |
| IOU CENTRAL, INC., dba IOU FINANCIAL, | PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR DISCOVERY[1] |
| Defendant. | |

On September 9, 2020, Plaintiff Tracy Aaron Malone filed a voluntary petition under

subchapter V of chapter 11, and he confirmed his plan of reorganization by order entered on

---

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.

January 14, 2021. Main Case ECF Nos. 1, 84. The court entered a Final Decree and closed the case on May 19, 2021. Main Case ECF No. 112. The parties are familiar with the background facts, which are spelled out in this court's memorandum decision denying Defendant IOU Central, Inc.'s motion to dismiss this adversary proceeding. ECF No. 28. I include and emphasize portions of the background facts below.

In his adversary proceeding complaint, Malone asserts 11 U.S.C. § 544(a)[2] rights and seeks entry of a judgment finding that IOU has no enforceable lien or, in the alternative, to avoid and preserve for the bankruptcy estate any existing lien. *See* ECF No. 1. Each party filed a separate motion for summary judgment and responses to the other party's motion. IOU also filed a cross-motion for discovery. *See* Plaintiff's Motion for Summary Judgment (ECF No. 40); Defendant's Response and Cross-Motion for Discovery (ECF No. 50), and Plaintiff's Response to Defendant's Response (ECF No. 53). *See also* Defendant's Motion for Summary Judgment (ECF No. 61), and Plaintiff's Memorandum in Opposition (ECF No. 63). Malone's motion seeks a ruling in his favor on all claims including that IOU has no security interest in his assets or that any security interest in those assets can be avoided and preserved for the bankruptcy estate. IOU's motion seeks a determination in its favor on Malone's claims and dismissal of this proceeding with prejudice. I have reviewed all the parties' filings as well as earlier hearings and rulings from this case. Additionally, as part of my review, I have considered the legal research in the pleadings and have conducted my own legal research. I am ready to rule on the motions.

///

///

---

[2] Unless otherwise indicated, all chapter and section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532.

**Jurisdiction:**

The bankruptcy court has jurisdiction to decide the claims at issue under 28 U.S.C. §§ 1334 and 157(a), and Oregon Local District Court Rule 2100-2. Although it failed to properly plead consent in its Answer and may have waived any objection pursuant to LBR 7012-1, IOU denies without supporting detail that the bankruptcy court has jurisdiction. ECF No. 13. As I previously ruled, this proceeding is a core proceeding under several subsections of 28 U.S.C. § 157(b)(2)—(A), (B), (K), and (O). *See* Memorandum Opinion, ECF No. 28. Additionally, IOU has filed a proof of claim in this case (POC #23-1), and thereby submitted to this court's jurisdiction. *See United Student Aid Funds, Inc. v. Espinosa*¸ 559 U.S. 260, 275 (2010), citing *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990). I have also already found that this court has constitutional authority to enter final orders and judgments in this proceeding. *See* ECF No. 28.

After confirmation occurs in a case, the court must apply the "close nexus" test to determine the bankruptcy court's post-confirmation "related to" jurisdiction. *See Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1287 (9th Cir. 2013). If the proceeding has the required close nexus to the bankruptcy case the bankruptcy court has jurisdiction. *Id*. In applying the close nexus test, matters affecting "the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005). Further, "it is well recognized that a bankruptcy court has the power to interpret and enforce its own orders." *Wilshire Courtyard*, 729 F.3d at 1289 (citing *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009) (court "plainly had jurisdiction")). This adversary proceeding is based on bankruptcy claims that the plan reserved to the reorganized debtor. The asserted claims require the court to interpret its prior orders on the claim objection

Page 3 of 20 – Memorandum Decision on Cross-Motions for Summary Judgment

and plan confirmation. These matters have a close nexus to the bankruptcy case, and the bankruptcy court has jurisdiction here.

**Summary Judgment:**

On a motion for summary judgment, the moving party has the burden to show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056. Material facts are such facts as may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of genuine disputes about material facts should be resolved against the moving party. *Crosswhite v. Jumpking, Inc.*, 411 F. Supp. 2d 1228, 1230 (D. Or. 2006). All rational or reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical Service, Inc.*, 809 F.2d at 630. That said, once the moving party has established a basis for summary judgment, the burden shifts to the nonmoving party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986) (cannot rely on mere allegations or denials).

Referencing the rule itself, the Supreme Court has emphasized that the mere existence or general assertion of a dispute is not enough to overcome a motion for summary judgment. *Anderson*, 477 U.S. at 248 (nonmoving party must set forth specific facts showing a genuine issue). Fed. R. Civ. P. 56(c)(1)(A) requires that the opposing party support the assertion of a disputed fact by "citing to particular parts of the materials in the record." Failing that, the court may grant summary judgment. Fed. R. Civ. P. 56(e)(3). Oregon's local rule reinforces this

approach by spelling out that the facts set forth by movant "may be deemed admitted" unless the opposing party specifically denies or controverts the facts. LBR 7056-1(f).

With motions filed by each party, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In that separate evaluation, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC, v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

**Undisputed Material Facts:**

As I described in the Memorandum Opinion on Defendant's Motion to Dismiss, placing these pending motions for summary judgment in the broader case context can be useful. Here, it might even be controlling. For that reason, I have included background information from the Memorandum Decision as follows:

**Background:**

It is useful to place this adversary proceeding in the broader context of the bankruptcy case to understand its timing and to address Defendant's asserted lack of consent. Although Plaintiff does not include all the events listed here in the complaint, the court takes judicial notice under Fed. R. Evid. 201 of the documents filed in the main bankruptcy case. While the facts contained in those documents are not established simply by their filing, the act of their filing and the dates of the documents are established and provide context for the claims asserted in the adversary proceeding. The complaint does refer to the voluntary petition in the bankruptcy case, the relevant loan documents including the guaranty, the UCC-1 financing statement, Schedule D, Proof of Claim #23, and the order on the claim objection.

On September 9, 2020, Plaintiff filed his petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.[3] Doc. #1, para. 6. *See also* Main Case Doc. #1. Plaintiff listed Defendant in his Schedule D, filed September 23, 2020, as a secured creditor with collateral consisting of all business equipment, accounts, and receivables with a value of $98,787.11. Main Case Doc. #29.[4] In his Schedule A/B and Statement of Financial Affairs, Plaintiff listed business connections to Calculated Comfort, LLC, and to Calculated Comfort. Main Case Doc. #29.[5]

According to the confirmed plan of reorganization, Plaintiff has operated a heating, ventilation, air conditioning, and refrigeration business in Central Point, Oregon. Main Case Doc. #60. The plan further provides that, prior to the filing, the business was operated through an entity, Calculated Comfort, LLC, which was dissolved September 2, 2020. Plaintiff asserts in his complaint that the LLC transferred all its assets to him personally by a bill of sale dated August 20, 2020. Doc. #1, para. 9. Plaintiff continues to operate the business as Calculated Comfort. Main Case Doc. #60. Although the LLC had two other members, since March 24, 2020, Plaintiff claims to be the only member and owner of the LLC. *Id.*

On November 18, 2020, Defendant filed Proof of Claim #23, claiming $324,566.91 secured by "all real and personal property of debtor." Defendant valued its collateral at $324,566.91 in the claim. The claim included a one-page summary of the amount claimed, but it did not include any other attachments. Contrary to the form's instructions and the requirements of FRBP 3001(c) and (d), Defendant did not attach copies of the underlying writings or documents showing evidence of the perfection of any claimed security interest. In his complaint, Plaintiff asserts that Defendant has refused to provide documents supporting its claim. Doc. #1, para. 8.

On November 24, 2020, Plaintiff objected to Proof of Claim #23 by using Local Bankruptcy Form 763.3, in which he marked form objections asserting that creditor failed to seek a determination of value or to include a copy of the documents required by the rules. Main Case Doc. #66. As additional grounds, the objection pointed out the lack of documents and disputed the claimed security interest in debtor's assets. *Id.* The Notice of Claim Objection detailed FRBP 3007(a)(2) service information and set a deadline for response. When Defendant failed to respond, the court entered an order upholding the objection by allowing the claim as a nonpriority unsecured claim for $324,566.91. Main Case Doc. #74. Plaintiff refers to the order, as the culmination of the claim objection process, in his complaint. Doc. #1, para. 12.

---

[3] Title 11 of the United States Code. [balance of footnote deleted]
[4] Amended Schedule D filed as Main Case Doc. #35 did not change that listing.
[5] Amended Schedule A/B, Main Case Doc. #34, and Amended Statement of Financial Affairs, Main Case Doc. #36, did not change those listings.

In his plan of reorganization, filed November 4, 2020, Plaintiff classified Defendant's claim in Class 1. Main Case Doc. #60. Class 1 acknowledged a secured claim in "business assets" valued at $98,787.11 with the balance of the claim treated as a Class 4 general unsecured claim. Defendant did not object to the plan or its treatment in it. The court confirmed the plan by order entered January 14, 2021. Main Case Doc. #84. Based on the order treating Proof of Claim #23 and representations at the confirmation hearing held on January 7, 2021, the confirmation order modified the treatment of Class 1 to eliminate all payment as a secured claim with the entire claim to be paid as a Class 4 general unsecured claim. The order further provided treatment that will depend on the results of this adversary proceeding. Main Case Doc. #84.

Defendant filed no objection to the plan or its confirmation, and it filed no appeal of either the order on the claim objection or the order confirming the plan. Plaintiff provided notice of substantial consummation of the plan (Main Case Doc. #89) and notice of the order confirming the plan (Main Case Doc. #90). Plaintiff filed his Final Account and applied for entry of the final decree. Main Case Doc. #110. The court entered the Final Decree and closed the case on May 19, 2021. Main Case Doc. #112. The case has remained closed.

Memorandum Opinion, ECF No. 28, pages 2-4.

Many critical material facts in this case are undisputed, or they cannot be denied. Prior to the bankruptcy filing, Malone operated a heating, ventilation, air conditioning, and refrigeration business through a business entity, Calculated Comfort, LLC. Malone has provided a declaration showing that the LLC transferred all the business assets to Malone pursuant to an attached August 20, 2020, bill of sale. ECF No. 52. IOU has not countered this material fact with sufficient evidence to make this transfer disputed.

In his original creditor mailing list filed September 9, 2020, Malone listed IOU at an address identified as its principal place of business. *See* List of 20 Largest Creditors, Main Case ECF No. 1. The Bankruptcy Noticing Center sent IOU notice of the bankruptcy filing at that address. *See* Certificate of Notice, Main Case ECF No. 22. On November 18, 2020, IOU filed a proof of claim listing its notice address at the same address used by Malone in the bankruptcy

filing. *See* Proof of Claim #23-1. Although filed as a secured claim, IOU did not attach copies of any writings supporting the claim such as any note, security agreement, or financing statement that might be related to the claim. Fed. R. Bankr. P. 3001(c)(1) (setting out requirements for supporting information to be filed with claims based on a writing). IOU further failed to attach "evidence that the security interest has been perfected" and, therefore, did not comply with Fed. R. Bankr. P. 3001(d).

On November 24, 2020,[6] Malone filed an objection to Proof of Claim #23-1, asserting that IOU had not requested a valuation of its interest, the claim did not include required documentation, and he denied IOU had a security interest in his real or personal property. Main Case ECF No. 66. The claim objection included a notice giving IOU a clear 30-day deadline to address the objections and indicated the court could "reduce, modify, or eliminate" the claim without further notice or a hearing. Malone served the notice and objection on IOU at the proof of claim notice address, in care of the corporate registered agent, and to the attention of IOU's president at its principal place of business. *See* Main Case ECF No. 66. After the notice period expired, on December 31, 2020, the court entered an order consistent with the objection allowing the claim as an unsecured claim in the amount of $324,566.91. *See* Main Case ECF No. 74. The order was not appealed.

On November 4, 2020, Malone filed his plan of reorganization. Main Case ECF No. 60. That plan treated the IOU claim as a separate Class 1 claim, proposing to split treatment of the claim between the secured and unsecured portions. Paragraph 4.02 of the plan provided for

---

[6] At the time of the claim objection, Malone's plan had been mailed to IOU with a confirmation hearing date of January 7, 2021, and a plan voting and objection deadline seven days prior to the hearing. These pending matters overlapped and put IOU on notice that it needed to object or respond to the claim objection and the proposed plan.

amortized payments for the secured portion of the claim with the unsecured portion of the claim treated as a Class 4 general unsecured claim. Main Case ECF No. 60, page 8-9. In various other provisions identified here, the plan provided for the treatment of disputed claims (5.03), the cancellation of documents supporting secured debt (10.06), and the preservation of "[a]ny and all causes of action" to the reorganized debtor (10.13.2). Main Case ECF No. 60. On November 10, 2020, Malone served the plan, along with the order setting the deadlines for filing ballots and objections, on IOU. *See* Certificate of Service, Main Case ECF No. 62. Although the claim objection had been served, IOU did not object to confirmation of the plan and did not appear at the confirmation hearing held on January 7, 2021. *See* Main Case ECF No. 85. Consistent with the order allowing IOU's proof of claim as an unsecured claim and eliminating the secured portion (Main Case ECF No. 74), the court approved a plan modification consistent with the order that eliminated payments to IOU as a secured creditor. *See* Main Case ECF No. 84. The court entered the order confirming the modified plan on January 14, 2021. Main Case ECF No. 84. On January 21, 2021, Malone served the confirmation order, which attached the complete plan as modified, on IOU and all creditors. *See* Certificate of Service, Main Case ECF No. 88. Neither IOU nor any other party appealed the confirmation order.

Malone filed this adversary proceeding on January 5, 2021. ECF No. 1. In response, IOU filed a motion to dismiss and to transfer the case. ECF No. 7. In the memorandum decision denying the motion to dismiss, I made several rulings including that: this is a core proceeding, this bankruptcy court has jurisdiction, Malone has standing to assert the claims, no determinations are being made affecting IOU's claims against Calculated Comfort, LLC, and the other guarantor, and the case should not be dismissed or transferred. ECF No. 28. Because the missing financing statement was critical to the perfection issue raised in the complaint, we

discussed this document at more than one hearing. At the March 9, 2021, hearing, I ordered IOU's counsel to provide the financing statements to Malone's counsel. *See* Minute Order, ECF No. 9. At the June 3, 2021, hearing, IOU's counsel conceded that IOU could not comply with the order, because it did not have a copy of the financing statement and had been unable to find or secure a copy. *See* 6/3/2021 Hearing Transcript, ECF No. 44, pages 3-6.

**Analysis:**

**Plaintiff's First Claim for Relief**

In the complaint's first claim, Malone asserts the § 544 powers of a bankruptcy trustee. As a chapter 11 debtor in possession, Malone has the rights and powers of a trustee pursuant to § 1107(a). The confirmed plan transferred those rights to Malone as the reorganized debtor. *See* ECF No. 84, paragraph 10.07, page 23. Section 544(a)(1) gives a trustee the rights of a creditor that extends credit and obtains "a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien." A trustee has those rights whether any actual creditor exists, and actual notice of a competing interest will not defeat the trustee's rights. *See* § 544(a). While bankruptcy law gives the trustee the rights and powers of a hypothetical judicial lien creditor, those rights and powers are usually determined under state law. *Bullock v. Roost (In re Gold Key Properties, Inc.)*, 119 B.R. 787, 789 (Bankr. D. Or. 1990).

IOU argues that Georgia law controls and points to paragraph 23 of the Promissory Note for Commercial Loan, which provides as follows: "Georgia Governing Law. Unless prohibited by applicable law, this Note shall be governed by and construed, applied and enforced in accordance with the laws of the State of Georgia without regard to principles of conflicts of law, except that the laws of another jurisdiction may govern the perfection, the effect of perfection or nonperfection and the priority of a security interest in the collateral in accordance with the

Page 10 of 20 – Memorandum Decision on Cross-Motions for Summary Judgment

Uniform Commercial Code." *See* Defendant's Motion for Summary Judgment, Exh. 1, Declaration of Robert Gloer, page 13, ECF No. 61. I do not find IOU's argument persuasive.

First, the language of the Promissory Note accounts for an exception where the law of another jurisdiction might apply. It specifically states that "the laws of another jurisdiction may govern the perfection, the effect of perfection or nonperfection and the priority of a security interest in the collateral in accordance with the Uniform Commercial Code." Next, Georgia law provides that, while the debtor and the collateral are in a particular jurisdiction, the local law of that jurisdiction governs perfection issues. Ga. Code Ann. § 11-9-301. Here, both Calculated Comfort, LLC, and the collateral were in Oregon, so Oregon law, not Georgia law, governs perfection and priority. *See also* Or. Rev. Stat. 79.0301 (local law governs perfection and priority).

Under Oregon law, entry of a judgment creates a lien on all the judgment debtor's real property located in the county in which the judgment is entered. Or. Rev. Stat. 18.150(2). However, the judgment's entry does not create a lien on personal property in the judgment debtor's possession. Such a lien is only created when the sheriff levies on the personal property as a predicate to the property's sale to satisfy the judgment. *See U.S. v. $319,603.42 in U.S. Currency*, 829 F. Supp. 1223, 1225 (D. Or. 1992) (construing Or. Rev. Stat. 23.410, Oregon's predecessor "lien by levy" statute). Or. Rev. Stat. 18.878(1) provides the methods by which a sheriff may levy on both real and personal property. Under Or. Rev. Stat. 18.878(2), "[w]hen a sheriff levies on personal property in any manner described in subsection (1) . . ., the interest of the judgment creditor in the personal property is the same as that of a secured creditor with an interest in the property perfected under ORS chapter 79." A lien creditor has a higher priority to the collateral than the holder of a security interest that is not perfected. *See* Or. Rev. Stat.

79.0317(1). The critical determination in this case, therefore, is whether IOU's security interest was perfected prior to the bankruptcy filing.

Oregon statutes, along with most states, provide for perfection of a security interest in personal property by the filing of a financing statement with the Secretary of State. *See* Or. Rev. Stat. 79.0310. Whether IOU has filed the necessary financing statement has been a matter of some dispute and discussion. *See* 6/3/2021 Hearing Transcript, ECF No. 44. Malone contends in his statement of material facts that IOU has not filed a financing statement. ECF No. 43, paragraph 5, page 2. He supports that contention with the hearing transcript and paragraph 4 of the Boyd Declaration. IOU's failure to produce the financing statement violates Fed. R. Civ. P. 26(a)(1)(A)(ii), which is incorporated into bankruptcy proceedings by Fed. R. Bankr. P. 7026. It also violates my minute order directing delivery of the document. *See* ECF No. 9. With the missing financing statement established by Malone and the case history, the burden shifts, and I look to IOU to establish the genuine issue of material fact. *See Matsushita Elec. v. Zenith Radio*, 475 U.S. at 586.

IOU counters Malone's assertion of no financing statement and the history of its failure to produce a financing statement with a denial of the assertion and a copy of a UCC-1 financing statement with a date-stamp showing it was filed on April 28, 2020. ECF No. 50, Exhibit 1. IOU also provides a declaration from its President and CEO, Robert Gloer, stating that the same financing statement is a "precise copy" of the financing statement covering IOU's security agreement. ECF No. 61, Exhibit 1, page 2. The UCC-1 financing statement provided lists the secured party's name as "Corporation Service Company, as Representative" with a first debtor named Calculated Comfort, LLC, and other debtors Tracy Aaron Malone and Arlen Heath. Although IOU contends this document is related to the IOU security interest, IOU is never

Page 12 of 20 – Memorandum Decision on Cross-Motions for Summary Judgment

mentioned in the document, and IOU fails to provide any information about who Corporation Service Company represents. As I previously stated, the opposing party cannot rely on "mere allegations" or "denials" to meet its burden on summary judgment. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586 n.11. The basic assertions are insufficient evidence to show that Corporation Service Company was acting on behalf of IOU. With the history of this proceeding, and the violation of the court order to produce the financing statement, these assertions are not enough. I find that IOU's assertions fail to meet its burden to counter Malone's statement of material fact.

This dispute over the financing statement did not start with this proceeding. IOU previously failed to attach any supporting documents to its proof of claim and failed to respond to Malone's objection to its claim. *See* Claim Objection, ECF No. 66. Based on the allegations in the claim objection, I entered an order sustaining the objection and making the claim an unsecured claim. *See* ECF No. 74. Furthermore, the claim objection included more than just an objection based on missing documents. *See Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424 (9th Cir. BAP 2005), and *Campbell v. Verizon Wireless (In re Campbell)*, 336 B.R. 430 (9th Cir. BAP 2005) (missing documents will affect only prima facie validity). Malone identified valuation concerns and challenged IOU's claim to a security interest in his real or personal property. Those are substantive disputes that limit the allowance of a claim under § 502(b)(1). If IOU had responded to the claim objection, it might have had other arguments. But it failed to do so and the order making the claim unsecured fully adjudicated the claim issues, making it a final act subject to appeal. *See Ross v. Thompson (In re Levine)*, 162 B.R. 858, 859 (9th Cir. BAP 1994). IOU did not appeal the order. I find no basis to set aside the order on the claim objection, which IOU neither opposed nor appealed.

An argument might be made that a party must file an adversary proceeding to determine the validity, priority, or amount of IOU's secured claim. *See* Fed. R. Bankr. P. 7001(2). IOU could have made that argument if it had appeared and responded to the claim objection. It did not. The main reason to require an adversary proceeding is to provide due process given by the procedural safeguards in an adversary proceeding. In this case, Malone served the claim objection on IOU at the notice address in the claim, as required by Fed. R. Bankr. P. 3007(a)(2). He also served the claim objection on IOU at its registered agent and to its president at the corporation's principal place of business, thereby meeting the service requirements of Fed. R. Bankr. P. 7004(b)(3). The notice was properly served, gave a clear deadline for response, and detailed the consequences of the failure to respond. A party with adequate notice is deemed to know the consequences of failing to respond to a legal notice. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199 (9th Cir. 2008), *aff'd United Student Aid Funds, Inc. v. Espinosa*¸ 559 U.S. 260 (2010). IOU cannot avoid those consequences by challenging those final determinations now, after failing to respond or appeal.

Finally, the order confirming the plan modified the treatment of IOU based on its new status as the holder of an unsecured claim. Main Case ECF No. 84. IOU received notice of the modified plan and the order confirming the plan, but it did not object to the plan, and it did not appeal the order confirming the plan. Main Case ECF No. 88. Even if the plan's treatment of IOU was improper, as IOU suggests, it's too late to complain. At the confirmation hearing, I made findings in support of the plan modification and that was the time to challenge them. The Supreme Court has held that, even if the bankruptcy court erred in confirming a plan, such plan remains enforceable and binding on a creditor who had notice of the error yet failed to object or timely appeal at the plan confirmation. *United Student Aid Funds, Inc. v. Espinosa*¸ 559 U.S. at

275 (chapter 13 case). IOU had notice and the opportunity to raise the issue at or following

confirmation. It chose not to act and raising the issue now does not afford them a second chance

to make its arguments. For all these reasons, I find that no dispute exists regarding the status of

IOU's claim and that Malone is entitled to summary judgment on the issue of his § 544(a) claim

avoiding any IOU lien in property of Malone.

**Plaintiff's Second Claim for Relief**

In claim two of the complaint, Malone seeks to preserve for the benefit of the estate the

lien avoided under § 551. This statute applies in an "automatic" manner and preserves any

transfer avoided under § 544 and other bankruptcy avoidance statutes. Without junior

lienholders, avoiding the lien will benefit the bankruptcy estate, and now the reorganized debtor,

automatically with respect to property of the estate. *See* § 551. *See also Retail Clerks Welfare*

*Trust v. McCarty (In re Van Kamp's Dutch Bakeries)*, 908 F.2d 517, 519 (9th Cir. 1990) (state

law remedies do not affect automatic preservation of avoided transfers). IOU does not

specifically challenge this claim, except to state that Malone is not entitled to the requested relief

against it. Therefore, because I have found that Malone must succeed on his avoidance claim,

summary judgment must also be granted on his § 551 claim.[7]

**Plaintiff's Third Claim for Relief**

Malone seeks recovery of attorney fees in the complaint's third claim. Under the federal

rules, a bankruptcy court will determine a prevailing party's entitlement to attorney fees by

---

[7] Although paragraph 17 in Malone's complaint refers to § 506(d)(2) as a basis for relief under his second claim, he does not assert the IOU lien is void under § 506(d) or discuss the statute in either his motion for summary judgment or his memoranda in support of the motion. Without more, I do not see how the statute applies and will treat any § 506(d)(2) claim as abandoned by Malone only for his summary judgment motion. I do not need to rule on an abandoned claim.

motion in a supplemental proceeding unless the fees must be proven as part of a party's claim. *See* Fed. R. Civ. P. 54(d)(2)(A), made applicable by Fed. R. Bankr. P. 7054 ("unless substantive law requires those fees to be proved at trial as an element of damages"). Bankruptcy courts apply the rule that parties pay their own attorney fees and costs unless specifically authorized under bankruptcy law or by other statute or contract. *See Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 448 (2007), *citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975) ("American Rule" limits recovery of attorney fees). The rule does not prevent bankruptcy courts from enforcing state statutes or contracts authorizing fees unless bankruptcy law expressly disallows the fees. *See Travelers*, 549 U.S. at 452.

Malone is not entitled to summary judgment on this claim. If he prevails in this adversary, he must file a motion complying with the other requirements in the federal rules, including the requirements to specify the basis for the claim and to provide details on the amounts sought. *See* Fed. R. Civ. P. 54(d)(2)(B). Malone cites to an Oregon reciprocal fee statute without explaining its application or giving reference to the applicable contract provision. If he files a motion, Malone must address those deficiencies and should counter IOU's contention that Georgia law applies.

**Affirmative Defenses:**

Malone also seeks summary judgment in his favor on all of IOU's asserted affirmative defenses. Affirmative defenses must be included in a responding pleading or risk their waiver. Fed. R. Civ. P. 8(c), made applicable by Fed. R. Bankr. P. 7008. The grant of summary judgment is appropriate if the party who has the burden at trial fails to make a sufficient showing of the basis for its claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (summary judgment motion may rely on other filed documents). IOU lists several defenses in its answer, but it does

not provide any details in the answer supporting those defenses. ECF No. 32. However, IOU does refer to the defenses in its response to Malone's motion (ECF No. 50) and supporting brief (ECF No. 51) and in its own motion for summary judgment (ECF No. 61). In those documents, I do not find sufficient facts alleged or a basis for the claims in the filed documents. Instead, it appears IOU attempts to collaterally attack the prior rulings of this court on the claim objection and plan confirmation. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d at 1199 (only limited ways final order can be challenged). I will discuss each of the defenses in more detail.

In its first affirmative defense, IOU alleges failure to state a claim, which it has continued to assert in this proceeding. In the memorandum opinion denying IOU's motion to dismiss, I provided reasons why Malone's complaint set out a proper claim. ECF No. 28. Additionally, in granting summary judgment on Plaintiff's claims one and two, I find that the complaint states proper claims and this defense must be rejected.

IOU next asserts lack of jurisdiction and improper venue in its second affirmative defense. Again, I previously rejected these defenses in the memorandum opinion denying IOU's motion to dismiss. ECF No. 28. IOU's motion to dismiss also sought transfer of the proceeding as an alternative. I denied that motion. ECF No. 29. I also discuss this court's jurisdiction in this memorandum, and I have found that I have jurisdiction and the necessary authority to address these matters. We do not need to revisit those issues. Venue is appropriate, because of the bankruptcy case. I find that IOU's second affirmative defense is without merit.

Next, IOU includes the following list as its third affirmative defense: estoppel, lack of consideration, statute of frauds, parole evidence, waiver, equitable and legal subrogation. IOU simply lists the defenses and has pleaded no facts supporting them. Perhaps these might be defenses to state court actions related to the Calculated Comfort, LLC, loan, but this adversary

Page 17 of 20 – Memorandum Decision on Cross-Motions for Summary Judgment

proceeding is a bankruptcy claim asserting trustee rights of a lien creditor. IOU has not asserted any claims against Malone in this case other than those listed in Proof of Claim #23-1. The claim deadlines have passed, and the case has closed. All other claims against Malone are discharged by confirmation of the plan. *See* ECF No. 84; § 1191(a); § 1141(d)(1). Therefore, these defenses are rejected.

In its fourth affirmative defense, IOU asserts that the complaint is barred because Malone has failed to join an indispensable party, Calculated Comfort, LLC, and due to "possible fraudulent transfers." Based on the uncontroverted evidence, the LLC transferred its assets to Malone and no longer has or claims an interest in the property. As provided in the plan of reorganization, Malone now asserts his trustee rights to avoid any lien claim in the transferred assets. The LLC is not a necessary party to this action. IOU is free to pursue claims against the LLC, and nothing determined here will affect the LLC. This bankruptcy case addressed any claims against Malone or the bankruptcy estate. Confirmation of the plan, entry of the debtor's discharge, and closure of the case prevents IOU from doing what it seeks to do here. I find that no support exists for IOU's fourth affirmative defense, and I will reject it.

In its fifth defense, IOU asserts lack of standing, unclean hands, consent, ratification, recoupment, setoff, offset, failure to mitigate, failure to establish or plead conditions precedent, breach of fiduciary duty, and in pari delicto. It further claims that Malone engaged in self-dealing and misuse of the property and committed illegal and immoral acts. In its sixth defense, IOU claims in some vague way that the Bankruptcy Code provides a defense and that this suit is brought in bad faith per Malone's alleged prepetition misconduct. These alleged defenses, all listed without factual support, provide a list of claims or objections that IOU should have asserted in response to the claim objection or the proposed plan of reorganization. It's too late at

Page 18 of 20 – Memorandum Decision on Cross-Motions for Summary Judgment

this stage. I find that these defenses are precluded by my prior rulings and that IOU has not provided a sufficient basis to prove these defenses. I will therefore reject these defenses and grant summary judgment for Malone.

Finally, IOU argues the case should be dismissed with prejudice, that it should be awarded its attorney fees, that the reference should be withdrawn, and that it's entitled to a jury trial. Again, no facts have been pleaded and the proper procedures have not been followed for these remedies. As asserted, I find no basis for any of the requested demands and will deny these requests for relief.

**Defendant's Cross-Motion for Discovery:**

When it responded to Malone's Motion for Summary Judgment, IOU sought denial of the motion and the granting of a Cross-Motion for Discovery. ECF No. 50. In its Motion for Summary Judgment, IOU seeks summary judgment in its favor on Malone's claims, dismissal of this adversary with prejudice, and denial of Malone's motions. ECF No. 61. Many of the factual allegations contained in the motions are uncontested by Malone. *See* Malone's Response, ECF No. 53 (admitted but "immaterial"); and Memorandum in Opposition, ECF No. 63 ("disputes the materiality"). I agree with Malone that IOU has had plenty of opportunity for discovery and that more discovery will not change the review of these motions. Because I have already found that Malone is entitled to summary judgment on claims one and two of his complaint, I find that IOU is not entitled to summary judgment in its favor or to dismissal of this adversary. The cross-motions and request for discovery will be denied.

**Conclusion:**

Based on the documents filed by the parties, and under the law as described in this ruling, I find that entry of summary judgment in favor of Malone on claims one and two of his

complaint is appropriate, but that his motion for summary judgment on claim three must be denied. I will also order summary judgment in favor of Malone with respect to the affirmative defenses alleged by IOU. As described above, I will deny IOU's motion for summary judgment and cross-motion for discovery on the grounds stated. The federal rules provide a process for requesting attorney fees and costs. They will not be addressed until that process is followed.

This ruling sets forth my findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a), made applicable under Fed. R. Bankr. P. 7052. They will not be separately stated. The court will enter its own order granting and denying the motions for summary judgment and denying the cross-motion for discovery consistent with this ruling. Following entry of the order granting and denying the summary judgment motions and denying the cross-motion for discovery, the claims in the complaint have been resolved, and counsel for Malone should submit a proposed final judgment resolving this adversary proceeding.